The next case in our call this morning is Agenda Number 3, Case Numbers 104608 and 104022. Counsel may proceed. In just a moment. Thank you, Counsel. You may proceed. Marie Quinlivan-Chack May it please the Court, my name is Marie Quinlivan-Chack. I represent the people of the state of Illinois as Appellant and Howard and Appellee and Holland. If I might take just a moment and look at the history of the expungement statute. Traditionally it has been construed that the petitioner asks the circuit court for expungement. Any petitioner who has any prior conviction, including if he's been pardoned because he still has that conviction, he is ineligible for expungement under Subsection A. The circuit court then exercises discretion, considers certain factors and determines whether or not to grant expungement. With the enactment of Subsection C, it's the people's position that the legislature intended to have the governor determine whether or not a particular petitioner should be eligible for expungement. So he's been pardoned, he still has a conviction technically, at least in the case of Howard that's the case. The conviction that has been pardoned still stands as a conviction. And the governor then is authorized to make a recommendation that or authorized to say that this petitioner is eligible for expungement. Then the circuit court is still free to exercise its discretion in determining whether or not to grant expungement. This construction allows the statute to stand pretty much unharmed. The traditional approach is maintained. There is no separation of powers problem if this construction is accepted. This construction should be accepted because the language in Subsection C is entirely permissive. The statute says there may be an order entered. Regardless of how many actors there are, and I know we've gone through a very tortured analysis in our briefs about the construction of the may, one may, two mays, who's acting, who's not acting. No matter what, the word is still may, a permissive word. The statute says the governor may authorize an expungement. Again, another permissive word. The orders themselves, the pardons themselves say that they are permitting expungement. All of these words are permissive. There is no mandatory language whatsoever. This, however, then combined with Subsection D where the statute says that the court may grant or deny expungement, Subsection C, I'm sorry, Subsection D refers back to the statute that clearly states that the circuit court is to still exercise its discretion in granting expungement even when the case comes before it under a gubernatorial pardon under Subsection C. It's our position that there is no need to consider the legislative debates to construe the statute because the statute is clear enough on its face from the plain language of the statute. But if this court goes forward and does consider the legislative debates, then those debates are not dispositive. There's never a time that the debates talk about whether or not the circuit court should be stripped of discretion. Never a time that the members who are debating specifically say that the governor has the final word. In fact, the debates do say, the Governor Edgar's mandatory veto does say, not every time should somebody who has been pardoned be expunged. So it's not a question of fundamental fairness. Oh, he's been pardoned, he should automatically get an expungement. Governor Edgar's mandatory veto specifically addressed that and specifically said, not every time should an expungement be granted. So the people's reading, again, allows the statute to stand as a whole, avoids any constitutional problem. There is no separation of powers problem. If we take the construction by Howard and Holland, then that does create a separation of powers problem. Then we have the governor saying to the circuit court, you must rubber stamp my order. And this flies in the face of the petitioner filing a petition. A petition suggests asking, seeking permission. It's not, I'm here and you have to do what I'm asking. If the governor directs the circuit court that he simply must rubber stamp what the governor has done, then we have a separation of powers problem because the executive is telling the judiciary what to do. Under the state's construction, however, there is no separation of powers problem because, again, the governor makes the petitioner eligible for expungement but does not mandate it. It then goes to the circuit court. Is there ever a time under the law where the governor wasn't even able to do that? Sure. Make expungement available? Sure. Before subsection C, there was absolutely nothing in the statute. So what would happen is the governor would grant the relief, in this instance a pardon, but that alone would not be a basis for the trial court to even consider expungement? Correct. What would happen is the petitioner would then go to the circuit court and ask for expungement. Was it in recognition of that fact that the statute was amended to permit the governor to recommend expungement? Yes. But, again, it's our position that in the case of Glisson, a 1978 case, the petitioner had been pardoned, asked for expungement and expungement was denied because he had a conviction for which he had been pardoned but nevertheless had a conviction. And it's our position that subsection C remedies that. All right, you have been pardoned, and although your conviction stands, you still are now eligible for expungement. So what subsection D does is it remedies that problem. It's our position it's not an automatic expungement, but rather it makes him eligible so that the circuit court can at least consider the factors in whether or not to grant the expungement. And that is what we believe the legislature was trying to remedy. Counsel, the defendants probably do make the point that that second may is a redundancy. Should we give any thought to the fact that the legislature gave the circuit court discretion in other sections of the statute, clear discretion, so it obviously knows how to do so when it intends to. Does that have any import on our decision? Your Honor, when you look at other parts of the statute, there are times when the legislature mandates that expungement be granted, and they did not use that language here at all. If you look at subsection C6, where there has been a judicial determination of actual innocence, the language is that the court shall order an expungement. So there is no question that the legislature knows how to make a mandatory statement. It knows how to direct the circuit court that expungement must take place. And that is not what they did in subsection C. In subsection C, they used permissive language. They used may. They used authorize. Again, the governor used permitted, all permissive language, no mandatory language. So it's our position then that subsection C was simply allowing the governor to make a petitioner eligible for expungement. And we're asking then that you affirm the majority decision in Holland and reverse the majority decision in Howard. Thank you. Thank you, Ms. Check. Ms. Daniel? Ms. Daniel, you were kind enough to send us a letter advising us that you would be splitting your time today. You're welcome to do that, but as to the mechanics of it, you're on your own. I understand, Mr. Chief Justice, and I'm going to do my very best. Good morning, Mr. Court. Ms. Quinlivan-Check and Mr. Ainsworth, may it please the Court. I'm Karen Daniel from the Bloom Legal Clinic at Northwestern University School of Law. I represent the appellant Dana Holland in docket number 105-022. And as a matter of fact, I've represented Mr. Dana Holland for the past seven years as he's tried to undo the effects of his two wrongful convictions that began back in 1993. I'd like to use my time, which I know I'm going to keep track of myself, to address the main points in our argument regarding the proper construction of Section 5 of the Criminal Identification Act. And Mr. Ainsworth, on behalf of Mr. Howard, will address and rebut some of the State's arguments. Mr. Holland lost ten years of his life to convictions for two crimes of which he was absolutely innocent. In 2003, using the results from post-conviction DNA testing, he was able to win his release from prison. And for the five years between then and now, he's been trying to cleanse his record of those convictions and those arrests. First, he petitioned the governor for a pardon. And he was granted the fullest pardon that our governor grants, which is a complete pardon based on actual innocence and expressly triggering the provisions of Section 5 of the Criminal Identification Act, the expungement provisions. The next month after receiving that pardon, Mr. Holland filed a petition in the circuit court seeking expungement, which was denied because the chief justice of the criminal division in Cook County mistakenly believed that Mr. Holland was ineligible for expungement due to an unpardoned prior conviction. And the State has now conceded that that did not occur. Mr. Holland's case is going to go back to the circuit court. We find ourselves today, or you find yourselves to answer the question of whether he's entitled to expungement under 5C, or whether he's entitled to expungement under 5D, or whether he has to go through the process all over again of offering evidence of his actual innocence and his personal and criminal history as he did during the pardon proceedings. I agree with the State is that the best indicator of the legislative intent is the actual language of the statute itself. And in her argument, my opponent misquoted that language twice, misquoted the language from 5C and from 5D. She said that under 5C, which is the substantive provision that governs expungement petitions by pardonese, she said that under that section there may be an order entered. That's not what it says. It says, and stripped down, getting rid of the extra may, stripped down to its essence, it says that a qualifying petitioner may have a court order entered. So the question is, what is the plain and ordinary meaning of may have? What do you mean when you say somebody may have something? When I tell my son, you may have a cookie, I have entitled my son to a cookie. He now has authority to go to the cookie jar and get the cookie, and he doesn't have to ask his father or anybody else for permission. He's entitled to it. And I submit that the same reading should be given here to subsection 5C. A qualifying petitioner who has received an appropriate pardon may have is entitled to expungement. End of story. There is no discretion afforded to the circuit court under 5C. And your argument, counsel, is no exceptions. Every gubernatorial pardon must result in an expungement if asked for. Every gubernatorial pardon that in the language of the statute authorizes expungement. And there's no argument here that this Mr. Holland's pardon does authorize it. So, yes, there's that. It is not material to your argument here that it was a wrongful conviction. I know you don't want to get that up. I understand that. But it would apply equally for a lawful conviction. The same argument would. As long as it has the expungement language in it. Yes, as long as it authorizes expungement. That's exactly right. That's the way the provision was written. Doesn't that implicate separation of powers issues, though? That interpretation? Well, this statute was written by the legislature. And the legislature, in its wisdom, has chosen to set up a scheme under which if the petitioner can come in and demonstrate that he's convinced our chief executive officer of the state of Illinois that he's entitled to an expungement order. Well, isn't that telling the court system that the action of the governor always trumps the court? It's creating an entitlement. And that's what the legislature does. The legislature creates entitlements. What about separation of powers? I don't see a separation of powers here that would cut against my position. I think that the state's argument, as expressed in its brief, is that expungement is a creature of the legislature. If you accept that Can we stay with separation of powers for just a moment? Certainly. If your argument is accepted, and it may be, a situation in which the legislature mandates that the governor, if the government pardons, the court has no option but to issue the order granting expungement. Isn't that what we're saying? It is, Your Honor. So the court, the judiciary, is faced with a situation in which they are compelled, legislatively and executively, to issue an order, whether they think it's a good idea or not. That's right. It's not a separation of powers. Well, I mean, I think that, no, I don't see that as a separation of powers argument. There are lots of, I mean, the court has a function here. The court has to find this is the right petitioner, that the petitioner has, in fact, received a pardon, that it's the  And the court has to make certain actions upon making findings in other situations. Upon making those findings here, the court is compelled to issue an order. Are there any other examples you can think of, similar situations that would justify or that would support your argument? I don't, well, I think it's not necessary to find other examples, but what I can say Well, I'll say this. There's, in one area, the governor's pardon, the exercise of pardon, entitles the pardonee to a benefit, and that is under the Court of Claims Act. The Court of Claims Act, there's a cause of action for wrongful imprisonment. Only when the governor has issued a pardon based on actual innocence. And The Court of Claims is not a judicial office, is it? Well, I'm just saying that's one instance. I guess I'm not really sure what it is. But that is an instance when the governor's pardon is, it creates a cause of action. And other than that, I think this is, yes, I think this is perhaps somewhat unusual. I don't know if it's unique. It may be that, I do know that in election cases, the courts sometimes are called upon to certify elections. That's getting way outside of my area of expertise, so I'm not sure what's involved in that. That's maybe another similar example. But in this case, again, the statute as written is simply telling the court if you make these findings, yes, you shall or you entitle the petitioner to an order. And I don't think that's at all different from any other instance in which if a court makes certain findings, the court is required to take certain action. That's what the legislature does. I want to move on just briefly to Section 5D, which is the other subsection that was misquoted by Ms. Quinlivan-Chek. And she said that under 5D, it says the court may grant or deny a petition. It doesn't say that. I mean, there is no may in that section. It says the court shall enter an order, granting or denying. And my point there is that it's twofold. One, Subsection 5D is a procedural provision that applies to all the substantive provisions of the expungement statute and deals with several different types of eligibility factors and also several different types of relief requested. So it's meant to be broad and not substantive, and it applies to a lot of different situations. But the shall. With regard to that Section D, though, the sentence that precedes it, it says that if there's an objection to the petition, doesn't that follow naturally that if the court has to weigh it then, whether if there's an objection to the petition, whether or not the court shall, you know, deny the petition? Oh, absolutely, Judge. But then the court needs to go back to the original subsection that the petition was brought under and decide which objections are valid and which aren't. So if you go back to Subsection 5A, which is the one where the discretion was written in, the court may enter an order, then there's a lot of weighing that goes on. Right. But the court still has the final discretion to determine whether or not they'll enter the order. Right. The discretion flows from the language in 5A, the substantive provision, whereas here the court needs to look at 5C. But the sentence in D begins with the notice of the petition for Subsection A, B, and C. And under those circumstances, when there's an objection, the court has to still determine whether or not it's going to be expunged. Yes. But the decision-making has to be based on the substantive provisions of the subsection under which the petition is proceeding. And so you need to refer back to, you know, which of the three subsections this petition is proceeding under. So here you go back, you look at 5C, and you see, oh, if it's a qualifying pardon, and it's filed in the right place, then this person may have the copy, may have the court order entered. So under your interpretation, under 5D, if it's a 5C situation, the court has to determine whether or not the petition is expunged. It really doesn't make any difference whether there's an objection or not. In the court language says shall enter a court order granting or denying, you're saying if it's a 5C situation, the court has to enter that order granting it. Well, if it's a 5C petition, yes, it does matter, because maybe the objection is this pardon does not authorize expungement. And I think there's been other cases I think GLSEN was referred to as a situation like that. So there are objections that might be valid. Just because the petition proceeds under 5C doesn't mean it's proper under 5C. So as I said, the court has an important role to play, but it can't just accept any objection and decide, oh, I think that's a good idea. It has to look back at the enabling provision. And by the way, just as, you know, just because that provision 5D says the court may grant or deny, it can't grant a petition for which a petitioner is not eligible under the preceding sections. All that it does always has to go back to the substantive provision that the petition is proceeding under. At this point, and at this point, Your Honor, I'll yield the podium to Mr. Ainsworth to address some of the State's further points. Thank you. Thank you, Counsel. Mr. Ainsworth. May it please the Court. Counsel? Counsel? My name is Russell Ainsworth, and I'm a member of Loewe & Loewe Law Firm. And on behalf of Stanley Howard, I come before you. Stanley Howard is a man who is wrongfully convicted of a murder he did not commit. This is the final step in his long journey to finally put to rest the damage that was done to him by detectives at Chicago's Area 2 under the command of John Burge. The State's position is fundamentally flawed because it would require a rewriting of the statute. It would require the circuit court to become the subject of the statute. And here a juxtaposition of subsections A and C is important. Under subsection A, the circuit court is the subject of the sentence, and it says that the circuit court may enter a court order expunging the arrest. There, the discretion is clearly given to the circuit court. And since 1977, case law has established that that's discretionary to the circuit court, and the circuit court has certain factors that it can consider. When the legislature enacted subsection C, the court decided to make the petitioner the subject of that sentence, where the petitioner may, upon being granted a pardon, explicitly providing for expungement, and upon a verified petition to the circuit court, and upon serving notice to the State's attorney and various other entities, he may have a court order entered. Under the State's interpretation, we would have to rewrite the statute to say that the circuit court may enter an order, but the language is the petitioner may have a court order entered. Circuit courts don't have court orders entered. They enter orders. And that's one difficulty with the State's position. In regard to the separation of powers. Do you have any further comment on the separation of powers question that was asked? I do. The legislature, in many respects, governs how expungements and court records are kept. In the Criminal Identification Act, there are a number of ways where the legislature dictates to the court, you must keep certain records in a certain way. You must keep them for a certain amount of time. You must make them publicly available. You must handle the records in certain ways. The expungements statute is no different. Under subsection A, the legislature has told the court that you may expunge records under certain circumstances. And under subsection C. Would it be different if they were telling us not to grant expungements? Well, the difference between the governor directing the court to do something and the legislature directing the court to consider certain things as to whether the three predicates have been met is that this is not at all uncommon. For example, if a jury finds somebody guilty of two murders, the court is then bound to sentence the offender to a life sentence. There's no discretion in that act. If certain criteria have met, more than one murder, then the court must enter a sentence of life term of imprisonment. There's no discretion there. And certainly that doesn't implicate separation of powers concerns. The legislature is setting up a circumstance by which the petitioner may come into court under subsection C. And I do want to address the legislative history. And this court need not reach that issue because the statutory language is clear. But if you go back to look at the legislative history, the original version of the bill simply said that anyone who has a pardon may have a court order entered expunging the record of arrest and conviction. And at that point, the governor mentioned that the governor mentioned that this could pose a problem because anyone who had a pardon would have their records expunged. And the legislature then amended the petition, amended the bill. And took out and added the requirement that the pardon explicitly authorize expungement. And by the legislature did not alter any of the other language that came before it, the language saying that the petitioner may have a court order entered. Unless there are further questions, my time is up. And I will ask that the court affirm the decision by the Howard Court. Thank you, counsel. Thank you, both. The state may now proceed. Thank you. Before I begin, I would just point out that Ms. Daniels and I have come to an agreement that we would split our rebuttal time. There was a letter to that effect that was sent to the court. So I'll argue for no more than five minutes and then turn the podium over to her. Since you only have five minutes. On the separation of powers, counsel makes an interesting argument. That in certain sentencing situations, the court is left without discretion. And I think therefore, arguing by analogy, why is there a separation of powers problem as related to expungement if the legislature, in their wisdom, dictates that expungement is mandatory when there's a pardon? In this case, under subsection C6, if there's a judicial determination of actual innocence, then expungement is mandated. The difference here, I think, is twofold. The first is that there is not a judicial determination when there is a gubernatorial pardon. Rather, there is an executive determination. So we have an executive, it's in a different branch. You have the executive then talking to the judiciary. And I think that makes a difference. Because then we have the executive telling the judicial, you must do this. I think the... Right. But I understand your distinction, but this is still a statute that's coming from the legislature, right? Right. So the separation of powers issue that we're discussing is whether the legislature has the right to mandate in this circumstance, gubernatorial pardon, that expungement is mandatory. And all I'm getting at, counsel is saying, well, there's other areas where it hasn't been held violative of separation of powers. I understand that. And my only response to that is those are rare circumstances. And, again, circumstances where there's been a judicial determination. Here we're mixing the branches, going from the executive to the judicial, as opposed to a judicial determination that mandates a particular sentence. So if you have a judicial determination, I think that makes a difference. It's within the same branch. And also, as we argued in a brief, I think if you've got a judicial determination, it's not behind closed doors. There's an open proceeding that you can follow, any citizen can follow how this determination was arrived at. And I think that makes a difference. And the other obvious response in this circumstance is, regardless of whether the legislature could have done that, although I'd argue that the language in subsection C is all permissive. And I certainly apologize for not being exact enough in my language when I was discussing the statute before, but it doesn't change my fundamental point that the language in subsection C is permissive. The statute uses the word may. It uses the word authorize. Even the governors themselves, when issuing the pardons, use permissive language. They use the word permit. So our position is that the difference here, whether it was a separation of issues power here, or a separation of powers issue here, is because you have the executive branch making a determination and then telling the judicial branch what they must do. Whereas the legislature in the other circumstance, there's a judicial determination. Okay, if that determination is made by the judicial branch, then the judicial branch must sentence in a certain way. Or must grant an expungement in a certain way. And I think that makes all the difference in the world. But notwithstanding, that's not what happened here. Here the legislature made permissive language in subsection C, and specifically included subsection C, the gubernatorial pardons, in their clause subsection D, where they said that the circuit court shall enter an order granting or denying expungement. So subsection D is a savings clause. It retains the discretion for the circuit court to determine whether or not to grant the expungement. And then finally, it just simply makes no sense to construe the statute as Howard and Holland do. Why would a petitioner, having been granted the pardon and expungement by the governor, then have to go to the circuit court and jump through even more hoops? File another petition? Go through more steps? It's clearly not what the legislature was intending. Legislature intended to leave the discretion with the circuit court. And so again, we're asking this court to affirm the majority decision in Holland and reverse the majority decision in Howard. Thank you. Ms. Daniel, you may proceed. I think I may have misunderstood her last point, because I think I was going to agree with that, that the legislature couldn't have intended for someone like Mr. Holland, who has proven his innocence, has convinced the governor of his innocence, and that he's worthy of expungement to jump through the hoops again and do it all over again in the circuit court. But I may have misunderstood her. But I wanted to just address perhaps another spin on separation of powers here. If your honors were to find that a governor, after a governor has deemed someone worthy of expungement, that that could be overruled by the circuit court, I think that would implicate separation of powers issues. This court has held in People, Exro, Madigan v. Snyder, that the governor's pardon powers are very, very broad in Illinois. And the Illinois Constitution states that a governor may issue pardons on such terms as he or she sees fit. In this instance, both Mr. Howard and Mr. Holland received the most, the fullest possible pardon, triggering these expungement provisions. Other states, however, have looked at the relationship between expungement and pardon. Some of them have found that in the case of a full pardon, as these pardons were, expungement is automatically a part of that. Because, of course, if the intention of the chief executive is to cleanse the person of all consequences of the conviction, expungement is part of that. And in this state, under the Criminal Identification Act, it is a requirement of law that certain agencies and the courts maintain records of arrests and convictions. And so if it is the intention of the governor to relieve a person of all of the legal consequences of his or her conviction, certainly that would include being relieved of the stigma of being associated with these cases of which the governor has pardoned that person. So that I think it's very arguable, although I don't think this court has to find it because I think the language of the statute is clear, but it's certainly very arguable that expungement automatically flows from a full pardon and that, in fact, it would violate separation of powers in the other direction if this court were to say that a circuit court could overrule the governor on the basis of a full pardon. And so I think that's what I would argue on this question. You find that it's available on a full pardon, but not a pardon that is without the finding of innocence? I'm not sure what you meant. Well, I think that the cases that I've looked at in other states have generally discussed this issue in the context of full pardon, and I think that that applies in this case. But, again, if you look at the breadth of the power of pardon granted to the governor under our Constitution, it says that the governor may issue pardons on such terms as he or she sees fit, and, again, this record keeping of the state is a consequence of the conviction. So under the Constitution, the governor can include that as part of any pardon, if the governor sees fit. It would have to be articulated. I mean, it's not, it wouldn't necessarily flow with the pardon, but if it were articulated, that would be a term that the governor sees fit. And that's, perhaps that was something that the legislature recognized in writing the statute. But even if the legislature didn't write the statute this way, I think it's very arguable that a person who received a pardon such as Mr. Holland did could go into court anyway and seek to enforce the pardon and have the records expunged. That's our argument on separation of powers.